DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

THOMAS R. GREEN (CABN 203480)
Assistant United States Attorney

   1301 Clay Street, Suite 340S
   Oakland, CA 94612
   Telephone: (510) 637-3695
   Fax: (510) 637-3724
   E-Mail: Thomas.Green@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 17 CR-00090 JST |
| Plaintiff, | )<br>) UNITED STATES'S OPPOSITION TO |
| v. | ) DEFENDANT'S MOTION FOR<br>) COMPASSIONATE RELEASE FROM CUSTODY |
| DANGELO CURRIE, | ) |
| Defendant. | )<br>) |
| | ) |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY
17 CR-00090 JST

# TABLE OF CONTENTS

BACKGROUND...........................................................................................................1

I.     DEFENDANT'S CRIMINAL CONDUCT AND CRIMINAL HISTORY..........................1

II.    DEFENDANT'S HEALTH CONDITION.......................................................................2

III.   DEFENDANT HAS NOT SOUGHT ADMINISTRATIVE RELIEF..............................3

ARGUMENT.............................................................................................................4

I.     THIS COURT MAY NOT DESIGNATE DEFENDANT TO HOME CONFINEMENT,
       AND SHOULD DEFER TO BOP'S EFFORTS PURSUANT TO 18 U.S.C. § 3624..............4

II.    THIS COURT LACKS JURISDICTION TO MODIFY DEFENDANT'S SENTENCE ...........6

       A.    The First Step Act Requires Administrative Exhaustion............................6

       B.    Defendant Has Not Exhausted His Administrative Remedies.......................8

       C.    There Is No Futility Exception to the Statutory Exhaustion Requirements.........8

III.   REDUCTION OF DEFENDANT'S SENTENCE IS NOT WARRANTED AND
       DEFENDANT'S MOTION SHOULD BE DENIED ON THE MERITS. .......................11

       A.    The Legal Standards Governing Defendant's Motion Require a Showing of
             Extraordinary and Compelling Reasons to Warrant a Reduction and a Showing
             the Defendant is Not a Danger......................................................11

       B.    Defendant Has Not Presented Extraordinary and Compelling Reasons for His
             Release...........................................................................15

       C.    This Court May Not Modify Defendant's Sentence Because He Is a Danger to
             Others.............................................................................20

       D.    Section 3553(a) Factors Weigh Against His Release..............................23

IV.    IF THIS COURT MODIFIES DEFENDANT'S SENTENCE, IT SHOULD DO SO WITH
       APPROPRIATELY RESTRICTIVE CONDITIONS................................................24

CONCLUSION.........................................................................................................24

# **TABLE OF AUTHORITIES**

Cases

*Barron v. Ashcroft*, 358 F.3d 674 (9th Cir. 2004) ..................................................................................7

*Bonneau v. Salazar*, 2020 WL 2216844 (9th Cir. May 7, 2020) ............................................................4

*Booth v. Churner*, 532 U.S. 731 (2001) ................................................................................................9

*Bowles v. Russell*, 551 U.S. 205 (2007) ................................................................................................7

*Dillon v. United States*, 560 U.S. 817 (2010) .......................................................................................6

*Eberhart v. United States*, 2020 WL 1450745 (N.D. Cal. Mar. 25, 2020) ........................ 7, 9, 11, 12, 14

*Gallo Cattle Co. v. United States Dep't of Agric.*, 159 F.3d 1194 (9th Cir. 1998) ................................9

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) ..............................................................................7

*McCarthy v. Madigan*, 503 U.S. 140 (1992) .........................................................................................7

*Reeb v. Thomas*, 636 F.3d 1224 (9th Cir. 2011) ...................................................................................4

*Ross v. Blake*, 136 S. Ct. 1850 (2016) ...............................................................................................9, 10

*Shaw v. Bank of America Corp.*, 946 F.3d 533 (9th Cir. 2019) .............................................................9

*Tapia v. United States*, 564 U.S. 319 (2011) ........................................................................................4

*United States v. Addonizio*, 442 U.S. 178 (1979) .................................................................................6

*United States v. Arceo*, No. 09-CR-00616-EJD-1, Dkt. 86 (N.D. Cal. May 22, 2020) .........................14

*United States v. Ayon-Nunez*, 2020 WL 704785 (E.D. Cal. Feb. 12, 2020) .........................................14

*United States v. Buenrostro*, 895 F.3d 1160 (9th Cir. 2018) .................................................................7

*United States v. Catledge*, No. 12-cr-00678-MMC-1, Dkt. 433 (N.D. Cal. Apr. 16, 2020) ..................9

*United States v. Ceballos*, 671 F.3d 852 (9th Cir. 2011) .......................................................................4

*United States v. Cazarez*, No. 15-CR-00362-CRB-1, Dkt. 78 (N.D. Cal. May 4, 2020) ......................12

*United States v. Davis*, 825 F.3d 1014 (9th Cir. 2016) .........................................................................7

*United States v. Ebbers*, 2020 WL 91399 (S.D.N.Y. Jan. 8, 2020) ....................................................10

*United States v. Fobbs*, No. 19-CR-410 WHA, Dkt. 32 (N.D. Cal. Apr. 7, 2020) ..............................4, 5

*United States v. Gentille*, No. 19-CR-00590, 2020 WL 1814158 (S.D.N.Y. Apr. 9, 2020) ...................7

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY
17 CR-00090 JST

*United States v. Godofsky*, 2020 WL 2188047 (E.D. Ky. May 6, 2020) ...............................................18

*United States v. Greenhut*, 2020 WL 509385 (C.D. Cal. Jan. 31, 2020).................................................13

*United States v. Hembry et al.*, No. 12-cr-00119-SI-1, Dkt. 1723 (N.D. Cal. Apr. 10, 2020)...............9

*United States v. Holden*, No. 3:13-CR-00444-BR, 2020 WL 1673440 (D. Or. Apr. 6, 2020) ..............7, 9

*United States v. House*, No. 14-cr-00196-CRB-1, Dkt. 2202 at 4 n.2 (N.D. Cal. May 20, 2020).....13, 17

*United States v. Jones*, No. CR 17-070 VC, Dkt. 93 (N.D. Cal. Apr. 10, 2020)..............................4

*United States v. Kelley*, 15-cr-00444-CRB-2, Dkt. 146 (N.D. Cal. May 27, 2020)..........................13

*United States v. Kim*, No. 17-CR-00355-YGR-1, Dkt. 96 (N.D. Cal. May 1, 2020)..........................4

*United States v. Libric*, No. 18-CR-00196 MMC-1, Dkt. 40, \*2 (N.D. Cal. September 1, 2020).........17

*United States v. Mangarella*, 2020 WL 1291835 (W.D.N.C. Mar. 16, 2020) ............................15, 16, 17

*United States v. Martin*, 2020 WL 1274857 (D. Md. Mar. 17, 2020).....................................................22

*United States v. Miller*, 2020 WL 2093370 (C.D. Ill. May 1, 2020) ......................................................18

*United States v. Raia*, 954 F.3d 594 (3d Cir. 2020) .......................................................................... 8, 14

*United States v. Ramos*, 2020 WL 1685812 (S.D.N.Y. Apr. 7, 2020) .............................................. 18, 19

*United States v. Reid*, No. 17-cr-00175-CRB-1, Dkt. 547 (N.D. Cal. Apr. 18, 2020).......................9

*United States v. Robinson*, No. 18-CR-00597 RS, Dkt. 33 (N.D. Cal. Apr. 27, 2020) ..........................18

*United States v. Rodriguez*, 2020 WL 1866040 (S.D.N.Y. April 14, 2020).........................................18

*United States v. Shabudin*, No. 11-CR-00664-JSW-1, Dkt. 571 (N.D. Cal. May 12, 2020)...............13

*United States v. Smartt*, 129 F.3d 539 (10th Cir. 1997).....................................................................6

*United States v. Sprague*, 135 F.3d 1301 (9th Cir. 1998) ...................................................................13

*United States v. Washington*, 549 F.3d 905 (3d Cir. 2008)................................................................6

*United States v. Washington*, 2020 WL 1969301 (W.D.N.Y. Apr. 24, 2020) ......................................18

*United States v. Weidenhamer*, 2019 WL 6050264 (D. Ariz. Nov. 8, 2019) ......................................14

*United States v. Willingham*, 2019 WL 6733028 (S.D. Ga. Dec. 10...................................................12

*Weinberger v. Salfi*, 422 U.S. 749 (1975) ..........................................................................................9

Statutes

18 U.S.C. § 922(a)(1)(A) ....................................................................................................1

18 U.S.C. § 3142(g).............................................................................................12, 20, 21

18 U.S.C. § 3142(g)(1) ......................................................................................................21

18 U.S.C. § 3553(a) ...........................................................................................................23

18 U.S.C. § 3582(c) .............................................................................................................6

18 U.S.C. § 3582(c)(1).....................................................................................................6, 8

18 U.S.C. § 3582(c)(1)(A) ........................................................................................ passim

18 U.S.C. § 3582(c)(2).........................................................................................................7

18 U.S.C. § 3624 ....................................................................................................... i, 4, 6

18 U.S.C. § 3624(c) ........................................................................................................4, 5

18 U.S.C. § 3621(b) ............................................................................................................4

18 U.S.C. § 3624(c) ............................................................................................................4

28 U.S.C. § 994(t) .......................................................................................................12, 21

34 U.S.C. § 60541(g) ..........................................................................................................5

Pub. L. 116-136..................................................................................................................5

Rules

United States Sentencing Guidelines (USSG) § 1B1.13................................................ passim

USSG § 1B1.13(2) .............................................................................................................20

Regulations

28 C.F.R. § 542.15(a) ..........................................................................................................8

28 C.F.R. § 571.61 ..............................................................................................................8

28 C.F.R. § 571.62(a) ........................................................................................................10

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY
17 CR-00090 JST

Defendant Dangelo Currie began serving a 60-month statutory maximum sentence for dealing firearms without a license only three months ago. He seeks relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). *See* Dkt. No. 29. The government opposes defendant's motion.

**BACKGROUND**

## I.   DEFENDANT'S CRIMINAL CONDUCT AND CRIMINAL HISTORY

Defendant is only 23 years old. But he has already suffered four (4) adult felony convictions, following two juvenile convictions for grand theft and robbery. He is a member of the Broad Day Killer criminal street gang.

This case concerns his most recent conviction, his only federal conviction, following his trafficking of firearms in an undercover investigation conducted by the U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). The defendant initially appeared in this case pursuant to a writ, temporarily taking him out of state custody where he was serving concurrent six (6) year prison sentences for convictions for felony burglary and felon in possession of a firearm.[1] The state firearm conviction resulted from defendant being located with a firearm and extended magazine outside of the home of Randall Wilson, at the times known as perhaps the highest ranking member of the Broad Day Killers, following a reported shooting in the area. *See* Presentence Investigation Report (PSR) at ¶ 55.

The single charge against Currie in this case stemmed from his numerous sales of firearms to an undercover law enforcement agent (the "UC") during the summer of 2016. In total Currie engaged in nine (9) separate transactions with the UC, selling the UC twenty (20) firearms, at least four (4) magazines including multiple extended magazines, body armor, and dozens of rounds of ammunition. PSR at ¶¶ 13-31.

On February 16, 2017, the Grand Jury returned a single-count indictment charging the defendant with dealing firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A). The defendant was arraigned on May 18, 2017. On July 14, 2017, the defendant pled guilty without a plea agreement. *See* Dkt. No. 21.

On October 3, 2018, this Court sentenced defendant to the statutory maximum sentence of five

---

[1] Defendants' other state felony conviction is for first degree residential burglary.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

years in prison, to be followed by three years of supervised release. Because defendant first needed to serve his state prison sentences, defendant only came back into federal custody to begin serving his firearms trafficking federal sentence on June 9, 2020, less than two months ago. Defendant is presently located at Federal Corrections Institute Victorville, a medium security prison, with a projected release date of August 7, 2024. *See* http:bop.gov/inmateloc.

## II.    DEFENDANT'S HEALTH CONDITION

Defendant is now 23 years old. The PSR noted that defendant had no history of health problems, aside from a possible allergy to chocolate. PSR at ¶ 83.

Defendant similarly denied having any medical conditions or health concerns at the health screening conducted when he came into BOP custody less than three months ago, on June 9, 2020. At the screening defendant denied having any of the numerous conditions health professionals asked him about, including denying having hypertension, diabetes, cardiovascular issues, respiratory concerns or any allergies. *See* Defendant's Combined Medical Records at pp. 7-10, attached as Exhibit A to the Declaration of Thomas R. Green in Support of United States' Opposition to Defendant's Motion for Release ("Green Decl.").[2] Defendant also did not list the use of any medications, over the counter or otherwise. *See id*. at p. 10.

Defendant also denied having any medical problems during a brief screening undertaken by the United States Marshal Service on or about June 9, 2020, in connection with his travel from state custody to BOP custody. *See id*. at p. 57.

Defendant denied having the same list of conditions, including hypertension and respiratory issues at a dental screening on June 22, 2020. *See id*. at p. 39. He again denied use of any medications. *See id*. at p. 40.

---

[2] Please note that the government has filed Exhibit A under seal and 7 through 10 of the 58 pages of Combined Medical Records equate to page 9 through 12 of the underseal filing on account of the exhibit being preceded by a caption page and an Exhibit A cover page. Subsequent page references to defendant's medical records are similarly based on the page number of the 58 page pdf of Defendant's Combined Medical Records, with the under seal exhibit being a 60 page document including the caption page and Exhibit A cover page, e.g. page 37 of the medical records will equate to page 39 of the underseal filing.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

Defendant appears to have first indicated any history of respiratory issues at his physical examination on July 14, 2020, at which time he claimed to have had asthma since childhood and that he last used an inhaler two months ago. *See id.* at p. 12. He continued to deny having any allergies. *See id.* Defendant was prescribed an Albuterol Inhaler after reporting a history of asthma. *See id.* at p. 23.

Defendant continued to deny having any history of cardiovascular issues at his physical, and consistent with his denial of such issues, his blood pressure registered a normal reading of 115/71. *See id.* at pp. 12 and 17. His blood pressure was slightly elevated at 127/81 during his initial screening. *See id.* at p. 9.

Defendant's BOP medical records noted defendant has been tested for coronavirus on multiple occasions during his brief incarceration at Victorville FCI, including on June 10, June 24, July 30 and August 25, 2020. *See id.* at pp. 1, 4 and 34. Though his test results all did not detect the presence of the SARS CoV 2 RNA, he is described in the medical records as an "asymptomatic person in quarantine" as of June 11, 2020, a condition that is listed as resolved as of June 29, 2020. *See id.* at pp. 34 and 42-51. Consistent with defendant having tested positive or potentially being positive but being asymptomatic, the medical records reflect his temperature being taken and registering in a normal range below 98.6 degrees Fahrenheit on each of the multiple times he was tested on a daily basis from June 9, 2020 until June 29, 2020.

Defendant also appears to be fit and not overweight, let alone obese, being 6'1" tall and weighing 161 pounds at a physical examination conducted on July 14, 2020. *See id.* at p. 17.

## III. DEFENDANT HAS NOT SOUGHT ADMINISTRATIVE RELIEF

Defendant's motion to this Court was filed on August 14, 2020. According to BOP counsel, who has spoken with the Warden's office for Victorville FCI, no record of any request for release has been submitted by defendant to the Warden or the facility at which he is incarcerated. *See* Green Decl. at ¶3. The Bureau of Prisons was made aware of the motion on August 26, 2020 by the United States Attorney's Office upon assigned counsel's receipt of the motion. *See id.* Defendant's motion seems to concede that he has not sought administrative leave, as the motion urges the Court to seek such leave from the BOP in his motion: "The judge has the authority after all consideration to refer Mr. Currie's

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

request to the Director of the Bureau of Prison on my behalf due to the unprecedented public health crisis . . . [and] to recommend Mr. Currie's immediate release from custody." *See* Dkt. No. 29 at 3.

**ARGUMENT**

**I.    THIS COURT MAY NOT DESIGNATE DEFENDANT TO HOME CONFINEMENT, AND SHOULD DEFER TO BOP'S EFFORTS PURSUANT TO 18 U.S.C. § 3624**

Though defendant's motion only makes reference to the statute authorizing defendant's release following exhaustion of his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), in an isolated reference defendant also requests that the Court "grant my immediate release from custody with home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)." *See* Dkt. No. 29 at 2. But only the BOP, pursuant to its exclusive authority under 18 U.S.C. § 3624(c), can designate where defendant serves his existing custodial sentence. This Court has no authority to designate defendant to home confinement, and should deny this request.

BOP has exclusive authority to determine the location where an inmate serves his or her custodial sentence, including whether transfer from a secure facility to home confinement is more appropriate for a particular defendant. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over [the place of imprisonment and treatment programs].."); *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) ("The Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *Reeb v. Thomas*, 636 F.3d 1224, 1226 (9th Cir. 2011) ("Congress delegated to the BOP the duty to manage and regulate all federal penal and correctional institutions."); *see also Bonneau v. Salazar*, 2020 WL 2216844, at *1 (9th Cir. May 7, 2020) (unpublished) (holding home confinement is a decision that is solely within the province of the BOP). Although this Court may make a non-binding recommendation to BOP as to home confinement, BOP's designation decision "is not reviewable by any court." 18 U.S.C. §§ 3621(b) & 3624(c); *see, e.g.*, *United States v. Kim*, No. 17-CR-00355-YGR-1, Dkt. 96 (N.D. Cal. May 1, 2020) (denying defendant's motion for compassionate release but recommending BOP place defendant in home confinement); *United States v. Jones*, No. CR 17-070 VC, Dkt. 93 (N.D. Cal. Apr. 10, 2020) (same); *United States v.*

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

*Fobbs*, No. 19-CR-410 WHA, Dkt. 32 (N.D. Cal. Apr. 7, 2020) (recommending BOP place defendant in home confinement).

Before the outbreak of COVID-19, BOP had authority under 34 U.S.C. § 60541(g) to place qualifying inmates over the age of 60 who had served two-thirds of their sentence on home confinement, or assign terminally ill offenders to home confinement at any time. It also had authority 18 U.S.C. § 3624(c) to assign a prisoner to a community correctional facility during the last twelve months of his or her custodial sentence, and to place a prisoner in home confinement for the shorter of 10 percent of his or her term of imprisonment or 6 months.

In light of the global pandemic, the BOP has been given expanded authority to review inmates who are potentially vulnerable to COVID-19 earlier in their sentences for transfer from a secure facility to home confinement. The Attorney General has directed the Director of the BOP to prioritize granting home confinement to eligible inmates who are especially vulnerable to COVID-19 based on their age and underlying health conditions as identified by the Centers for Disease Control and Prevention ("CDC"), where home confinement would be more effective in protecting their health, and not present a great risk to public safety. Att'y Gen. Memo. (Mar. 26, 2020). The Attorney General has also invoked his emergency authority to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2)." Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281, § 12003(b)(2) (March 27, 2020). As a result, BOP is broadly evaluating inmates for placement in home confinement according to internal guidelines, with priority given to those most vulnerable to COVID-19 and those at facilities most affected by COVID-19. Att'y Gen. Memo. (April 3, 2020); *see also* BOP Memo. (May 8, 2020) (providing updated guidance allowing for consideration for home confinement of inmates with minor disciplinary issues within the past twelve months).

Pursuant to the Attorney General's directive, BOP is urgently assessing the inmate population for home confinement. To date, BOP has transferred 7,559 inmates to home confinement since March 27, 2020, and BOP continues to aggressively screen all potential inmates for eligibility, without any need by

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

the inmate to apply for consideration. *See* COVID-19 Home Confinement Information, https://www.bop.gov/coronavirus/ (updated every day at 3:00pm EST).

There is great overlap in the considerations between designation for home confinement under 18 U.S.C. § 3624 and compassionate release under 18 U.S.C. § 3582(c)(1)(A). So, to the extent defendant asks this Court to modify his sentence pursuant to the Court's authority under 18 U.S.C. § 3582(c)(1)(A), so that he can be released on probation or supervised release with conditions to stay at home, this Court—if it has jurisdiction to entertain the motion—should still wait for the BOP to evaluate defendant for home confinement.

## II.    THIS COURT LACKS JURISDICTION TO MODIFY DEFENDANT'S SENTENCE

Defendant has not submitted a request based on COVID-19, with a release plan, to BOP. This Court therefore lacks jurisdiction to grant Defendant's motion because Defendant has not satisfied the administrative exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A).

### A.    The First Step Act Requires Administrative Exhaustion.

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010). It is well established that once a district court has pronounced sentence and the sentence becomes final, the court has no inherent authority to reconsider or alter that sentence. Rather, it may do so only pursuant to statutory authorization. *See, e.g.*, *United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979); *United States v. Washington*, 549 F.3d 905, 917 (3d Cir. 2008); *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997) ("A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization.") (internal quotation marks omitted).

18 U.S.C. § 3582(c) provides three narrow exceptions to the rule of finality, only the first of which is relevant here. 18 U.S.C. § 3582(c)(1)–(2). 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part that the court "may not modify a term of imprisonment once it has been imposed except" upon a defendant's motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

6

the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," where such a reduction also meets other specified requirements.

Unless defendant meets these administrative exhaustion requirements, this Court lacks jurisdiction to modify defendant's sentence. Section 3582(c) states that a "court may not modify" a term of imprisonment except in enumerated circumstances. It thus "speak[s] to the power of the court rather than to the rights or obligations of the parties," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (citation omitted), delineating "when, and under what conditions," a court may exercise its "'adjudicatory authority,'" *Bowles v. Russell*, 551 U.S. 205, 212–13 (2007) (quoting *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam)). Indeed, the Ninth Circuit has held that a defendant's failure to meet the requirements of 18 U.S.C. § 3582(c)(2) means that the district court lacks jurisdiction to reduce the defendant's sentence. *United States v. Buenrostro*, 895 F.3d 1160, 1164 (9th Cir. 2018); *United States v. Davis*, 825 F.3d 1014, 1019–20 (9th Cir. 2016) (en banc).

Even if the exhaustion requirement of Section 3582(c)(1)(A) were not jurisdictional, it is at least a mandatory claim-processing rule and must be enforced if a party "properly raise[s]" it. *Eberhart*, 546 U.S. at 19 (holding that Fed. R. Crim. P. 33, which permits a defendant to move for a new trial within 14 days of the verdict, is a nonjurisdictional but mandatory claim-processing rule). "'Where Congress specifically mandates' it, exhaustion is not merely appropriate but 'required.'" *Barron v. Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)); *see also United States v. Holden*, No. 3:13-CR-00444-BR, 2020 WL 1673440, at *6–10 (D. Or. Apr. 6, 2020) (providing a detailed analysis why statutory exhaustion requirements such as here are mandatory, even in the midst of the COVID-19 crisis, and distinguishing contrary district court cases). The government raises the rule here, and it must be enforced.[3]

---

[3] There has been some confusion about the administrative exhaustion requirement based on the isolated position previously taken by the U.S. Attorney's Office for the Southern District of New York in two cases, where that office did not argue that exhaustion was jurisdictional under the statute. *See United States v. Gentille*, No. 19-CR-00590, 2020 WL 1814158, at *3 (S.D.N.Y. Apr. 9, 2020); *United States v. Jasper*, No. 18-CR-00390, Dkt. 440 (S.D.N.Y. Apr. 4, 2020). The U.S. Attorney's Office for the Southern District of New York no longer takes that position, and the government is not aware of any case where the government has taken that position since those two cases. Accordingly, contrary to some

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

7

To exhaust an inmate's administrative remedies, he or she must initiate a request in writing to the Warden detailing "the extraordinary or compelling circumstances that the inmate believes warrant consideration" and the inmate's "proposed release plans" with several necessary details. 28 C.F.R. § 571.61 (implementing Section 3582(c)(1)(A)). BOP's Program Statement sets forth procedures for implementing Section 3582 states: "A request for a RIS is considered 'submitted' for the purposes of 18 U.S.C. § 3582(c)(1), when received by the Warden in accordance with this section." *See* https://www.bop.gov/ policy/progstat/5050_050_EN.pdf. Then, the inmate must either wait 30 days to appeal to this Court or exhaust two additional internal levels of appeal within the agency under 28 C.F.R. § 542.15(a).

## B.    Defendant Has Not Exhausted His Administrative Remedies.

Here, defendant did not meet the administrative exhaustion requirements of Section 3582(c)(1)(A). Defendant has not shown that he has filed an administrative motion with the warden. As such, defendant has not initiated any administrative review of either his release or possible home confinement, and the 30 day clock to exhaust his administrative remedies has not started to run.

## C.    There Is No Futility Exception to the Statutory Exhaustion Requirements.

The COVID-19 pandemic, while presenting urgent and serious concerns, does not allow this Court to circumvent the statute's administrative requirements. Indeed, bypassing statutory exhaustion requirements defies explicit Supreme Court precedent and would have lasting impacts beyond the present pandemic. As the Third Circuit recently emphasized: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (denying motion for compassionate release and refusing to remand to district court because any remand would be futile since defendant did not exhaust his administrative remedies). Numerous courts, including most

---

recent decisions in this district, these two instances do not constitute the government taking a case-by-case approach to whether exhaustion is jurisdictional—merely outlier positions taken. *Contra United States v. Connell*, No. 18-CR-00281-RS-1, Dkt. 49 (N.D. Cal. May 9, 2020); *United States v. Fischman*, No. 16-CR-00246-HSG-1, Dkt. 76 (N.D. Cal. May 1, 2020).

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

judges in this district, have also recognized that COVID-19 does not excuse the administrative requirements of 18 U.S.C. § 3582(c)(1)(A). *See, e.g.*, *United States v. Reid*, No. 17-cr-00175-CRB-1, Dkt. 547 (N.D. Cal. Apr. 18, 2020) (holding the court lacked jurisdiction to review defendant's claim for compassionate release until administrative remedies had been exhausted); *United States v. Catledge*, No. 12-cr-00678-MMC-1, Dkt. 433 (N.D. Cal. Apr. 16, 2020) (denying COVID-19-based compassionate-release motion for lack of exhaustion); *United States v. Hembry et al.*, No. 12-cr-00119-SI-1, Dkt. 1723 (N.D. Cal. Apr. 10, 2020) (same); *United States v. Eberhart*, No. 13-CR-00313 PJH, Dkt. 64, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) (same). Although "it is indisputable that the COVID-19 outbreak is unprecedented and poses a heightened risk to those in this nation's prisons and jails, [ ] absent congressional action to relieve inmates of the exhaustion requirement [of Section 3582(c)(1)(A), this Court] is unable to provide the relief Defendant seeks." *Holden*, 2020 WL 1673440, at *10.

While *judicially*-created exhaustion requirements may sometimes be excused by judge-created exceptions, it is well settled that a court may not ignore a *statutory* command such as that presented in Section 3582(c)(1)(A). *Shaw v. Bank of America Corp.*, 946 F.3d 533, 541 (9th Cir. 2019) ("[T]the Supreme Court has made clear that if exhaustion 'is a statutorily specified prerequisite'—as opposed to a judicially created one—'[t]he requirement is . . . something more than simply a codification of the judicially developed doctrine of exhaustion, and may not be dispensed with merely by a judicial conclusion of futility[.]'" (quoting *Weinberger v. Salfi*, 422 U.S. 749, 755 (1975)); *Gallo Cattle Co. v. United States Dep't of Agric.*, 159 F.3d 1194, 1197 (9th Cir. 1998) (noting that "while judicially-created exhaustion requirements may be waived by the courts for discretionary reasons, statutorily-provided exhaustion requirements deprive the court of jurisdiction and, thus, preclude any exercise of discretion by the court."); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (emphasizing point that courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). The Supreme Court reaffirmed the principle in *Ross v. Blake*, 136 S. Ct. 1850 (2016), in which the Court rejected a judicially created "special circumstances" exception to the exhaustion requirement stated in the Prison Litigation Reform Act of 1995 (PLRA), and instead demanded fidelity to the statutory text, explaining that the "mandatory language" of the exhaustion

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

requirement "means a court may not excuse a failure to exhaust" even to accommodate exceptional circumstances, *id.* at 1856.

Not only does giving the BOP a first chance to evaluate any motion for early release under Section 3582(c)(1)(A) required, it is good policy. The Bureau of Prisons conducts an extensive assessment for such requests. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. As the Procedures reflect, BOP completes a diligent and thorough review, with considerable expertise concerning both the inmate and the conditions of confinement. BOP is better situated[4] than the courts to make an initial evaluation of defendants' requests for early release for it maintains defendants' relevant medical and behavioral records, and has expertise in assessing the safety and health of their inmates and managing the administration of their facilities. The BOP also has a variety of administrative procedures available for addressing COVID-19-based concern.

Unfortunately and inevitably, just as many in the general populace have contracted COVID-19, some BOP inmates have become ill and more will likely become ill in the weeks ahead. But the solution is not to exclude BOP from reviewing applications for compassionate release. For example, notwithstanding the current pandemic crisis, BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider myriad other factors, including the availability of transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced if any service), and of supervision of inmates once released (at a time that the Probation Office has necessarily cut back

---

[4] Until the First Step Act's recent enactment, the BOP had exclusive authority to adjudicate such claims. Notably, the First Step Act did not change the factors relevant to whether and how the Court should modify a defendant's sentence, only the procedures by which a defendant can raise such claims. *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

on home visits and supervision). BOP is best positioned to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations based on an inmate's background and medical history, and more general considerations regarding the conditions and needs at particular facilities, and it should have the opportunity to assess those factors during the statutorily required review period.

Exhaustion cannot—but also should not—be excused. *Reid*, No. 17-cr-00175-CRB-1, Dkt. 547 (holding exhaustion requirement is jurisdictional and cannot be waived because it is statutorily mandated); *Eberhart*, 2020 WL 1450745, at *2 (declining to excuse failure to exhaust COVID-19 compassionate-release motion); *Hembry*, No. 12-cr-00119-SI-1, Dkt. 1723. The Court should thus dismiss Defendant's motion for lack of jurisdiction.

## III.   REDUCTION OF DEFENDANT'S SENTENCE IS NOT WARRANTED AND DEFENDANT'S MOTION SHOULD BE DENIED ON THE MERITS.

Although the COVID-19 pandemic is an extraordinary world event, defendant has failed to show that its impact on him, specifically, warrants his immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A) because he is not suffering from a medical condition that the CDC has identified as particularly at risk for severe symptoms if he were to contract COVID-19. Defendant also presents a danger to the community, and re-balancing the Section 3553(a) factors does not indicate the defendant should be released immediately as he seeks.

### A.   The Legal Standards Governing Defendant's Motion Require a Showing of Extraordinary and Compelling Reasons to Warrant a Reduction and a Showing the Defendant is Not a Danger.

This Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court "finds that" either "extraordinary and compelling reasons warrant such a reduction," or the defendant is at least 70 years old and has served at least 30 years in prison, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *See, e.g.*, *United States v.*

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

*Reid*, No. 17-cr-00175-CRB-1, Dkt. 554 (N.D. Cal. May 5, 2020); *United States v. Robinson*, No. 18-CR-00597 RS, Dkt. 33 (N.D. Cal. Apr. 27, 2020).[5]

The pertinent policy statement is set forth at United States Sentencing Guidelines (USSG) § 1B1.13. It prohibits this Court from reducing a defendant's sentence unless the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See United States v. Cazarez*, No. 15-CR-00362-CRB-1, Dkt. 78 (N.D. Cal. May 4, 2020) (denying compassionate release claim due to danger).[6]

The Sentencing Commission also provided explicit examples of what constitutes an "extraordinary and compelling circumstance":

> (A)     **Medical Condition of the Defendant.**—
>
>> (i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii)    The defendant is—
>>
>>> (I)      suffering from a serious physical or medical condition,
>>>
>>> (II)     suffering from a serious functional or cognitive impairment, or
>>>
>>> (III)    experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

[5] Congress explicitly gave authority to the Sentencing Commission to further describe what conduct would authorize a court to order a compassionate release. Specifically, 28 U.S.C. § 994(t) states that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A), "including the criteria to be applied and a list of specific examples." The statute also states that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

[6] While district courts disagree about whether the First Step Act alters the binding nature of USSG § 1B1.13, "the limited statutory exceptions to the general rule of finality of judgment" counsels in favor of following the Sentencing Commission's guidance, as one judge of this Court recently did when faced with a similar motion. *Eberhart*, 2020 WL 1450745, at *2; *see also United States v. Willingham*, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (collecting cases).

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

(B)    **Age of the Defendant** — The Defendant is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the ageing process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment; whichever is less.

(C)    **Family Circumstances.** —

(i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or the registered partner.

USSG § 1B1.13 cmt. n.1.[7]

Thus, in order to qualify for compassionate release after having exhausted his or her administrative remedies with the Bureau of Prisons, a defendant must be able to demonstrate one of the listed reasons in (A)–(C) above. *See United States v. Kelley*, 15-cr-00444-CRB-2, Dkt. 146 (N.D. Cal. May 27, 2020). Defendant bears the burden to show special circumstances meeting the high bar set by Congress and the Sentencing Commission for compassionate release to be granted. *See United States v. Shabudin*, No. 11-CR-00664-JSW-1, Dkt. 571 (N.D. Cal. May 12, 2020); *United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding that defendant bears the burden of establishing entitlement to sentencing reduction and citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to

---

[7] Application Note 1(D), the final example listed by the Sentencing Commission, is inapplicable to this situation. *See United States v. House*, No. 14-cr-00196-CRB-1, Dkt. 2202 at 4 n.2 (N.D. Cal. May 20, 2020) (holding (D) inapplicable even in light of the COVID-19 pandemic). It provides as follows: "**Other Reasons.** — As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." USSG § 1B1.13 cmt. n.1. In turn, BOP promulgated Program Statement 5050.50, amended effective January 17, 2019, to set forth its own internal criteria for evaluating compassionate release requests. *See* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. In this case, the Director of BOP did not identify any "extraordinary and compelling reason" under this application note.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

13

provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

The existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not by itself, fall into either of those categories and therefore could not alone provide a basis for a sentence reduction.[8] As Chief Judge Hamilton recently held in this district, "General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. §1B1.13." *United States v. Eberhart*, No. 13-CR-00313 PJH, Dkt. 64, 2020 WL 1450745, at \*2 (N.D. Cal. Mar. 25, 2020); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (Third Circuit holding that the existence of COVID-19 alone does not constitute a basis for granting compassionate release). The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population.

Nor would a defendant's chronic but manageable underlying medical condition, alone, constitute "extraordinary and compelling" circumstances. *See United States v. Arceo*, No. 09-CR-00616-EJD-1, Dkt. 86 (N.D. Cal. May 22, 2020) ("[T]he mere fact that Defendant suffers from chronic conditions is insufficient [for compassionate release]."). Indeed, before the outbreak of COVID-19, district courts addressing § 3582(c)(1)(A) claims routinely noted: "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at \*2–3 (E.D. Cal. Feb. 12, 2020) (rejecting a claim for compassionate release from a defendant suffering from severe back injuries and epilepsy) (quoting *United States v. Weidenhamer*, 2019 WL 6050264, at

---

[8] Indeed, it is reported that some inmates are *trying* to contract COVID-19 in the hopes that it will enable them to get released from prison. *See* https://www.washingtonpost.com/nation/2020/05/12/inmates-coronavirus-infect-los-angeles/ (inmates in LA county jail have attempted to infect themselves with COVID-19 in order to be released).

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

14

*5 (D. Ariz. Nov. 8, 2019)). Compassionate release is "rare" and "extraordinary" and courts routinely deny such claims. *See Arceo*, No. 09-CR-00616-EJD-1, Dkt. 86 (noting compassionate release is rare); *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020) ("[A] compassionate release . . . is an extraordinary and rare event." (citation omitted)).

But the combination of an inmate's chronic medical condition and the risk of contracting COVID-19 in a custodial setting may constitute an extraordinary and compelling reason to grant a motion under 18 U.S.C. § 3582(c)(1)(A), where COVID-19 and an inmate's medical condition would not individually suffice. If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19,[9] that condition—in combination with the likelihood that a defendant may contract COVID-19 while incarcerated and suffer severe symptoms as a result—may constitute a "serious" medical condition "from which [the defendant] is not expected to recover," which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." USSG § 1B1.13 cmt. n.1(A)(ii)(I). However, as part of its analysis of the totality of circumstances, the Court should also consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated. That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at his or her institution.

## B. Defendant Has Not Presented Extraordinary and Compelling Reasons for His Release.

Defendant has not demonstrated extraordinary and compelling reasons warranting early release. Defendant identifies two health conditions that he claims place him at an elevated risk of serious illness from COVID-19: high blood pressure and asthma. The record does not establish either that defendant suffers from the health conditions he claims, or that either condition would warrant extraordinary relief even if he did have high blood pressure and asthma. The Centers for Disease Control's ("CDC")

---

[9] *See* Centers for Disease Control, *At Risk for Severe Illness*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last modified July 17, 2020).

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

guidelines do not list either condition among the eight health conditions that place someone at higher risk of serious illness from COVID-19.

The record does not support defendant's claim that he suffers from high blood pressure or that high blood pressure by itself warrants the extraordinary relief defendant seeks. First, defendant does not describe his purported high blood pressure in any detail in his motion. He makes only a single reference to having high blood pressure, stating "I suffer from asthma and hypertension." Defendant does not assert that he has ever been diagnosed with high blood pressure or hypertension, or even cite a single occurrence when his blood pressure was measured as "high." Even assuming that he has occasionally registered a reading of elevated or high blood pressure, as was the case during his June 9, 2020 health screening and his blood pressure registered as slightly elevated at 127/81, it is not clear what the conditions were that may have generated such a reading, such as exercise or another medical condition that may explain a single high reading. According to the Mayo Clinic, a doctor will not diagnose a person with high blood pressure based on a single reading, which may be high for any number or reasons, but only after a number of consistently high readings over time:

> Your doctor will likely take two to three blood pressure readings each at three or more separate appointments before diagnosing you with high blood pressure. This is because blood pressure normally varies throughout the day, and it may be elevated during visits to the doctor (white coat hypertension).

https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/diagnosis-treatment/drc-20373417#:~:text=If%20you%20have%20any%20type,measures%20your%20heart's%20electrical%20activity.

Second, defendant's medical records obtained by the government reflect that the last time defendant's blood pressure was taken it was only 115/71, which is considered normal. *See id.*; *see also* Defendant's Combined Medical Records at pp. 12 and 17, attached as Exhibit A to the Green Decl.

Third, with the exception of his present motion, defendant does not appear to have ever indicated that he suffers from high blood pressure, either to the Probation Office in connection with the preparation of his PSR, the U.S. Marshal Service, to BOP health care providers or BOP dental care providers at screenings that took place in the last few months.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

Fourth, the medical records do not reflect defendant ever having been diagnosed with high blood pressure.

Finally, even if defendant did have high blood pressure, the CDC does not regard high blood pressure as one of the eight health conditions for which it contends the science supports a conclusion that a person is at higher risk if they contract COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Rather, it is merely among a number of conditions for which the CDC indicates a person "might be at an increased risk." *See id*. The mere possibility of being at greater risk cannot rise to the level of scientific evidence to constitute a compelling and extraordinary circumstance warranting release. *See also United States v. House*, No. 14-CR-00196-CRB-1, Dkt. 2202 (N.D. Cal. May 20, 2020) (denying compassionate release based in part on finding essential hypertension, along with other non-CDC-identified risk factors, did not qualify as an extraordinary and compelling reason); *United States v. Libric*, No. 18-CR-00196 MMC-1, Dkt. 40, *2 (N.D. Cal. September 1, 2020) (denying that hypertension constitutes an extraordinary condition as it is a condition experienced by nearly half of all adults and the CDC states there is only "mixed evidence" to support a finding that one is at greater risk). Accordingly, this medical condition does not qualify defendant for extraordinary relief.

The case for defendant's purported asthma constituting an extraordinary and compelling basis for his release is just as weak. First, defendant never asserted he suffered from asthma until his most recent physical on July 14, 2020, in which he claimed that he has experienced it since childhood. Despite being such a long term condition, defendant neglected to inform either the Probation Office, the Marshals Service or BOP health or dental caregivers that he suffered from asthma when they enquired about his health conditions. Nor did defendant list any medication when asked if he takes any medication, when asked by these many different entities. *See* Defendant's Combined Medical Records at pp. 7-10, 39-40 and 57, attached as Exhibit A to the Green Decl.

Asthma is also not listed by the CDC among the eight conditions it regards as placing a person at greater risk of serious health consequences on account of contracting the coronavirus. The CDC lists "moderate to severe" asthma as a health condition that "might" place one at increased risk. First such a

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

nebulous finding with conflicting evidence does not rise to the level of constituting an extraordinary and compelling basis for defendant's release. Second, there is nothing in the record to establish that defendant's purported asthma rises to the level of being "moderate to severe" in its application to defendant. The PSR and BOP medical records do not include any asthma diagnosis or any indication that he sought treatment for the condition while in custody. In short, there is no evidence that defendant's asthma is "moderate to severe," such that it puts him at heightened risk of severe illness related to COVID-19. *See United States v. Miller*, 2020 WL 2093370 (C.D. Ill. May 1, 2020) (denying motion for compassionate release and noting that "nothing in the medical records . . . indicates that Defendant's asthma is moderate or severe[ and] [t]o the contrary, the medical records state that Defendant's asthma is controlled with medication"); *United States v. Washington*, 2020 WL 1969301, at *4 (W.D.N.Y. Apr. 24, 2020) ("generalized claim of asthma, without more, is not sufficiently extraordinary and compelling reason for a sentence reduction" under 3582; finding defendant could not show he had "moderate to severe asthma" where court was "without any medical evidence or the opinion of a physician").

Accordingly, defendant's hypertension and asthma do not qualify as serious medical conditions that, combined with the risk of contracting COVID-19 in a prison environment, could warrant the reduction of his sentence. *See, e.g.*, *United States v. Godofsky*, 2020 WL 2188047, at *2 (E.D. Ky. May 6, 2020) (holding that defendant, who was 63 years old, had high blood pressure, high cholesterol, asthma, and is currently taking medications that weaken his immune system, did not meet standard for compassionate release); *United States v. Rodriguez*, 2020 WL 1866040, at *4 (S.D.N.Y. April 14, 2020) ("All [Defendant] has done is note that he has asthma, he is in prison, and there is a COVID-19 outbreak nationwide. That is not enough."); *United States v. Ramos*, 2020 WL 1685812, at *2 (S.D.N.Y. Apr. 7, 2020) (finding 41-year-old defendant suffering from "chronic and severe asthma" had not demonstrated extraordinary or compelling circumstances where medical records showed no new asthma attacks and that his asthma was being treated by BOP).

Furthermore, BOP has taken significant measures to protect the health of inmates in its charge. BOP has had a Pandemic Influenza Plan in place since 2012. BOP Health Services Division, Pandemic

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf. That protocol is lengthy and detailed, establishing a six-phase framework requiring BOP facilities to begin preparations when there is first a "[s]uspected human outbreak overseas." *Id*. at i. The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates. The Action Plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters for a period of at least 14 days, in order to stop any spread of the disease. Only limited group gathering is afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, this step as well will limit transmissions of the disease. Likewise, all official staff travel has been cancelled, as has most staff training. All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved.

The Action Plan comprises of several additional preventive and mitigation measures, including suspension of social visitation, internal inmate movements, legal visits, official staff travel, training, access by volunteers and many contractors; extensive screening of staff and inmates (including screening of all new inmates); quarantine; and modified operations to maximize social distancing as much as practicable. *See* Federal Bureau of Prisons, BOP Implementing Modified Operations, *available at* https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed March 23, 2020). All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures.

As of May 18, 2020, all newly admitted inmates to any BOP detention center, jail, and institution will be tested at a quarantine site for COVID-19, in addition to screening them for COVID-19 symptoms

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

and a temperature check, before they enter their designated BOP facility.[10]  The records reflect that defendant himself has been repeatedly tested for COVID-19. The testing will be conducted either using Abbott instruments on-site or through commercial lab contracts. Inmates who test positive or have symptoms consistent with COVID-19 will be placed in isolation, even if asymptomatic, until they meet the current CDC release-from-isolation criteria. COVID-19 negative inmates will be placed in quarantine for 14 days and have twice daily symptom screening and temperature checks. If they develop COVID-19 symptoms during the 14 days, they will be retested for COVID-19 and placed in isolation.  At the end of the 14-day quarantine, an inmate will be retested for COVID-19.  If the test is negative, the inmate will be deemed appropriate to transfer from the quarantine site to their designated institution.  Both inmates and staff are required to wear face masks during any transfer that occurs.

Though FCI Victorville has had more than 100 inmates test positive for the disease, defendant does not stand out among the prison population as requiring release. Even defendant in his motion concedes the tremendous efforts undertaken by the BOP, as he acknowledges that hundreds of persons being released (actually 7,559 as of the filing of this opposition brief) and that release is not limited to persons who have served half of their sentences.

Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

### C.   This Court May Not Modify Defendant's Sentence Because He Is a Danger to Others.

The Court may not reduce Defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2).  *See Cazarez*, No. 15-CR-00362-CRB-1, Dkt. 78 (denying compassionate release claim due to danger).  This record precludes such a finding.

---

[10] *See* Federal Bureau of Prisons, BOP Announces Update on Inmate Movement, *available at* https://www.bop.gov/resources/news/pdfs/20200527_press_release_inmate_movement.pdf.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

Defendant's motion does not even attempt to argue that he is not a danger to the community. And the evidence presents a strong basis to conclude the community would be endangered by his early release, less than three (3) months into a sixty (60) months sentence.

The standard for compassionate release is not just whether someone has performed well in prison. *See* USSG § 1B1.13 app. note 3 ("Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."). Defendant must also show that he will not be a danger if released. He cannot do so. *See United Sates v. Cazares*, No. 18-cr-00466-BLF-1, Dkt. 351 (N.D. Cal. Apr. 23, 2020) (concluding, in the pre-trial detention context, that "the balancing of the factors does not warrant [defendant's] release [because he] continues to pose a serious risk to the safety of the community, and that risk overrides [defendant's] concerns that he might contract COVID-19 at [local jail]."). Recognizing that there is a significant difference between doing well in prison and doing well in society, this Court must look to the factors set forth in 18 U.S.C. § 3142(g).

Under § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4). Consideration of these factors—which are not affected by COVID-19—does not allow this Court to conclude that Defendant is not a danger to the safety of any other person or the community.

In the present case, the seriousness of the danger to the community posed by defendant is substantial, a record well established by the PSR in this case. Defendant was originally detained in this case as a danger to the community. The same danger that justified defendant's detention and custodial sentence remains.[11] Despite being only 20 years old at the time he was sentenced, defendant's

---

[11] There are several recent examples of defendants committing violent crimes after being

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

conviction in this case represented his fourth adult felony conviction following two juvenile convictions for grand theft and robbery. His crimes have also involved burglary of homes and the possession and trafficking of firearms, all of which present a direct risk to the lives of persons in the community. When he is not personally possessing firearms and entering persons homes to steal, he is selling firearms to persons he has every reason to believe cannot lawfully purchase and possess firearms, including the sale of assault style firearms, magazines, body armor, and ammunition.

The COVID-19 pandemic and risk to defendant (a risk that applies in the community as well) does not reduce his danger to others. The danger posed by defendant includes his involvement with the Broad Day Killers, a criminal street gang. Not only does Defendant present a danger to the community, but the community itself is more vulnerable to such danger given the COVID-19 pandemic. People are at higher risk of violent robberies because they are home rather than out of home; people are likely more susceptible to fraud because there is heightened fear and uncertainty. There is less foot traffic in the streets, making those who do have to leave home more vulnerable, as criminals can prey upon them with less concern than normal that a bystander will observe or intervene. And because first responders are focused on mitigating the effects of the COVID-19 outbreak, they are less equipped to prevent and respond to wrongdoing. Indeed, as a district court in Maryland recently observed, installation of location-monitoring tools now poses a risk to United States Pretrial Services officers "given the current recommendations regarding implementation of social distancing." *United States v. Martin*, 2020 WL 1274857 (D. Md. Mar. 17, 2020). Defendant has not shown that his current medical condition or risk of COVID-19 (a risk that applies in the community as well) makes him less of a danger. The defense presents no additional facts that meaningfully shift the balance of the § 3142(g) factors in Defendant's favor.

In sum, defendant has failed to demonstrate that the § 3142(g) factors the Court considered at the time of detention have changed, and thus the Court should deny Defendant's motion for immediate

---

released based on COVID-19 concerns, including murder and carjacking. *See, e.g.*, https://www.cnn.com /2020/04/14/us/man-released-jail-coronavirus-arrested-trnd/index.html; https://www.mercurynews.com/ coronavirus-man-wanted-for-carjacking-assault-committed-after-contested-jail-release.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

22

release.

### D.       Section 3553(a) Factors Weigh Against His Release.

Finally, any compassionate-release decision—even for a statutorily eligible defendant—must also consider the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A)(i). Those factors—which this Court already considered when imposing Defendant's sentence—do not support his request for premature, permanent release. The law, and the specific facts of defendant's case, neither demand nor endorse that result.

First and foremost, defendant has served less than three (3) months of a sixty (60) month sentence, approximately five percent (5%) of the sentence the Court determined was necessary to serve the sentencing objectives of section 3553. Releasing defendant when he has only started serving his sentence would have the opposite effect intended by section 3553. It would teach defendant that he would not be held accountable for committing federal crimes, and that he can claim susceptibility to the risk of COVID-19 should he be arrested or convicted again, and expect to being given a free pass. Releasing defendant now, when he has only begun to serve his sentence for his serious crimes, is anathema to the sentencing objectives of section 3553 and the sentence this Court deemed necessary in this case.

Defendant is only 23 years old, two generations shy of the age range identified by the CDC as being at heightened risk based on exposure to COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last modified August 16, 2020) (highlighting "People aged 65 years and older" as a group at higher risk for severe illness). Serving his sentence, in full, will give him the time he needs to contemplate a law abiding life, and mature and gain the perspective and skills he needs to be a positive contributing member of society, rather than a risk to the general population.

Although there are risks in an institutional setting, BOP has taken significant measures to protect the health of inmates in its charge. And despite the relatively high number of cases at FCI Victorville, to date only a single inmate has passed on account of the deadly virus. Though each death is tragic in its own right, more than 180,000 Americans have already died on account of the virus, a stunning number

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

that places the state of the virus at FCI Victorville in perspective. Furthermore, defendant presents no meaningful plan about how he will avoid the rash of crimes he committed if he is released, or how he will be any safer from the virus if he is released. He receives heath care while in the custody of the BOP and is not intermingling with others in the general population, and defendant has not demonstrated that he will have such resources and limited contact with others should he be released. The government cautions against releasing defendant according to a non-specific release plan that offers no assurance that he and the community will be safer if he is released.

## IV.   IF THIS COURT MODIFIES DEFENDANT'S SENTENCE, IT SHOULD DO SO WITH APPROPRIATELY RESTRICTIVE CONDITIONS

If the Court is inclined to grant defendant's motion for compassionate release, this Court should substitute a term of probation or supervised release with a condition of home confinement for the duration of defendant's current sentence of imprisonment until, to be followed by the term of supervised release with conditions as ordered by the Court at Defendant's original sentencing hearing. Defendant has served just more than 6 years of his 10-year sentence. The government submits that releasing Defendant outright would not appropriately re-balance the § 3553(a) factors of this case, particularly given that the present conditions August 7, 2024, caused by the pandemic are likely impermanent— public reporting indicates that various medical professionals globally are in the process of developing a vaccine and researching other methods of combatting the disease in the coming months. *See, e.g.*, https://www.nih.gov/news-events/news-releases/nih-clinical-trial-investigational-vaccine-covid-19-begins.

In order to minimize risks to public health, the government also respectfully requests that the Court (1) order any release only after Defendant's release and travel plans are in place, and (2) set any release 14 days from the date of its order to accommodate BOP's ability to quarantine Defendant prior to his release to protect the community from potential further spread.

## CONCLUSION

Defendant remains a danger to others, and he has not presented evidence of a serious medical condition that substantially impairs his ability to provide self-care or any other extraordinary or

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

24

compelling reason to warrant a reduced sentence. This Court should deny defendant's motion for immediate release under 18 U.S.C. § 3582(c)(1)(A)(i) on the merits, and find that he has not exhausted his administrative remedy, as statutorily required.

DATED: September 1, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

_/s/ Thomas R. Green_
THOMAS R. GREEN
Assistant United States Attorney

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

25